FILED
2014 Feb-26  PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SYLVIA L. MILLER, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 2:11-CV-2871-LSC |
| | ) | |
| JEFFERSON COUNTY BOARD | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

I.     Introduction

Before the Court is Defendant Jefferson County Board of Education's ("the Board's") motion for summary judgment on Plaintiff Sylvia L. Miller's ("Miller's") claim of race discrimination in violation of 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983, for failure to promote her to the Secretary for School Group Directors ("SGD Secretary") position.  (Doc. 15.)  The Magistrate Judge filed a report and recommendation on January 14, 2014, recommending that this Court deny the Board's motion for summary judgment based on the existence of genuine issues of material fact regarding whether the Board's articulated reasons for not promoting Miller were a pretext for discrimination.  (Doc. 40.)  The parties were allowed

fourteen days to file written objections to the Magistrate Judge's report and recommendation. The Board timely filed objections on January 28, 2014 (Doc. 41.) In accordance with Paragraph Six of this Court's General Order, the case was then randomly reassigned to the undersigned judge. (Doc. 42.) Having reviewed the matter, and having the benefit of the Board's objections, which the Magistrate Judge did not have, this Court finds that the Magistrate Judge's report and recommendation is not due to be adopted and the Board's motion for summary judgment is due to be granted.

II.    The Board's Objections

    A.    Standard of Review

When objections are filed to a Magistrate Judge's proposed findings of fact and recommendation, the district court is to "make a de novo determination of those portions of the report . . . to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C); *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988).

    B.    Miller Did Not Produce Sufficient Evidence of Pretext

The Board's first objection is that the Magistrate Judge's recommendation to deny summary judgment was erroneous because Miller did not present evidence sufficient to permit a reasonable fact finder to conclude that the reasons the Board

gave were pretextual.  For the following reasons, this Court agrees with the Board.

As an initial matter, the Court largely agrees with and adopts the Magistrate Judge's statement of facts and will not restate them here except when they will facilitate a better understanding of the Court's analysis.[1]  The Court also agrees with and sees no reason to repeat the Magistrate Judge's conclusions that, in accordance with the framework for proving circumstantial evidence of discrimination as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Miller made out a prima facie case of race discrimination on her failure to promote claim, and the Board met its burden to articulate at least one legitimate, non-discriminatory reason for its decision to promote Dianne Wojdula ("Wojdula"), a white female, over Miller, a black female, for the SGD Secretary position.

As the Magistrate Judge found, the Board provided three legitimate, non-discriminatory reasons for promoting Wojdula over Miller: 1) the two interviewers,

---

[1] One exception need be noted.  The Magistrate Judge incorrectly stated:

> Mr. Pearson's notes stated that *Miller* responded to question five during her interview: "Happy to take name, number and get back with them. If someone else that could help them. Depending on the meeting. Remain calm - relate back what the phone message is about, cared about."  *Id*. at 69.  Pearson also noted "handled pretty well."  *Id.*

(Doc. 40 at 9, 17 n.8.) (emphasis added).  This was actually Mr. Pearson's note regarding *Wojdula's* response to question five, not Miller's.

Kay Lindsey ("Lindsey"), a white female, and Jimmie Pearson ("Pearson"), a black male, both SGDs, determined Wojdula performed better than Miller during the interviews, specifically with regard to their respective answers to question five; 2) Wojdula had experience working in a school setting while Miller did not; and 3) based on their personal experiences working with Miller and Wojdula in the past, Pearson and Lindsey believed Wojdula's skill and experience made her a better fit for the position.  The Magistrate Judge ruled that Miller provided sufficient evidence that each of these reasons were a pretext for discrimination.  This Court disagrees, as will be explained below.

          1.    The Interview

The Board's first legitimate, non-discriminatory reason for promoting Wojdula over Miller was based on Wojdula scoring better than Miller in their respective interviews, specifically with regard to their answers to question five.

As noted by the Magistrate Judge, the Board did not deviate from its normal practice in filling the position of SGD Secretary.  Both Wojdula and Miller were asked the same questions and their responses were scored in areas of impact, personality, oral communications and professional attitude.  Lindsey scored both Wojdula and Miller the same in the categories, but gave Miller an overall score of 3 and Wojdula an

overall score of 1.5 (the higher score). Pearson rated Wojdula higher than Miller in the category of professional attitude and gave Wojdula an overall higher score, a 2, than Miller, who received a 3. Pearson and Lindsey said that they scored Miller lower than Wojdula based in part on their responses to question five,[2] which asked how the applicant would handle the following situation:

> A parent from one of our schools calls to demand that they speak to one of us now. We are in a meeting at the Central Office. They become loud, angry, and tell you that you had better locate us right now or they will be contacting the media. What do you do?

(Doc. 17-8 at 61.) Pearson and Lindsey's notes indicate that Miller responded that she would seek out a higher up or contact the Sheriffs in Student Services or the Homewood Police. In contrast, Wojdula said she would take the parent's name and number, ask if someone else could help, [contact the SGD] depending on the meeting, remain calm, sympathize, ask about the situation, not take it personally, and stated that she had handled these calls when she worked at Pinson Valley High School. Pearson wrote that Wojdula "handled [the question] pretty well." Pearson and Lindsey partly based their decision to promote Wojdula over Miller because they

---

[2] Lindsey testified: ". . . if you look at our interview sheet, I think question number 5 is probably a good indication of what gave [sic] Dianna actually a better answer than Sylvia had on that particular question." (Doc. 17-3 at 12.)

determined that her ability to respond to calls from angry parents was better than Miller's based upon their answers to the interview question. The ability to field those calls was relevant to the job, which required the SGD Secretary to take calls for the SGDs, handle complaints from angry parents, and keep the SGDs informed of developing problems or conflicts. It appears to this Court that it was a legitimate business decision for Pearson and Lindsey to conclude that employing a secretary that would calmly handle an irate parent, rather than one that would involve law enforcement in those type of calls, was more prudent.

However, the Magistrate Judge took issue with the subjective nature of the interview scoring system and the fact that Miller and Wojdula apparently had similar answers to other interview questions. He ultimately concluded that "a reasonable juror could find the difference in Miller and Wojdula's answers to question five insufficient to support their drastically different scores and the Board's proffered reason unworthy of credence." (Doc. 40 at 16.)

This Court cannot agree that any evidence of pretext exists with regard to the interviews. The inquiry into pretext requires the Court to determine whether, in view of all of the evidence, "the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable fact finder to determine that

the defendant's proffered legitimate reasons were not what actually motivated its conduct." *Silvera v. Orange County School Board*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quotation omitted). Such evidence must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Alabama State Tenure Commission,* 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted). In other words, pretext means that the reasons given by the employer were not the real reasons for the adverse employment decision. *Patrick v. Bishop State Community College*, 470 F. App'x 797, 800 (11th Cir. 2012). This Court's inquiry is limited to determining whether the Board gave an honest explanation for its decision, but it may not reexamine the Board's legitimate business decisions. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (courts are not in the business of adjudging whether employment decisions are prudent or fair, but are to determine whether unlawful discriminatory animus motivates a challenged employment decision); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543, cert. denied 522 U.S. 1045 (1998) (plaintiff may not establish the defendant's proffered reasons are pretextual "merely by questioning the wisdom of

the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer"); *Chapman v. A.I. Transport*, 229 F.3d 1012, 1030, 1034 (11th Cir. 2000) ("[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer").  This Court simply sees no weaknesses or inconsistencies in the Board's proffered explanation that Wojdula was promoted over Miller based in part on their very different answers to interview question five.

Moreover, the fact that the Board's interview scoring system was based on the interviewers' subjective view of whose qualifications were superior for the position does not automatically make it suspect.  "Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext . . ." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) ((quoting *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001)).  While the Board's decision to promote Wojdula over Miller was based on Pearson and Lindsey's subjective views, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Id.* (quoting *id.* at

1186).  Accordingly, since Miller failed to rebut one of the Board's explanations, summary judgment is due to be granted to the Board.  However, the Court will address the Board's additional legitimate, nondiscriminatory reasons in the interest of completeness.

2.    Experience Working in a School Setting

Lindsey and Pearson testified that Wojdula's experience working in a school setting made her a better candidate for the position than Miller.[3]  Lindsey also explained how Miller's experience in answering phones at the Central Board Office did not provide her with the same kind of experience that Wojdula did by answering the phones at a school.  Lindsey testified that she had observed that the Central Board

---

[3] Lindsey testified:

> . . . I think any time there's a job opening and people are interviewed, you want to try and get the best fit. That doesn't mean that Sylvia is not a good employee; but I think that in the case of Ms. Wojdula, when I was out in the schools, Ms. Wojdula worked at Pinson Valley High School. She worked in the main office. If I went in to see the Principal and she was answering the phone, it did give me an opportunity to see any interactions that she might have had on the phone, working with students, helping teachers as they came in. I had an opportunity to observe that . . . But I think any time that you're trying to select an employee, you want to select the best one that has the most experience in what you feel like are your needs. And that's how we went about selecting Ms. Wojdula for her job.

(Doc. 17-3 at 11.)

Office Receptionist doesn't always try to solve problems but merely routes calls to the appropriate office or department. Lindsey described how the SGD Secretary's duties on a regular day would involve handling an emergency when the SGDs are not at the Central Office, which involves a degree of problem solving. Lindsey also gave other examples of what the SGD Secretary needs to be able to handle,[4] and she explained that Wojdula did get some of this experience working in a school. Explaining how to make the decision to hire the SGD Secretary, Lindsey testified:

> I think each job has its own requirements, needs, whatever. And I can say from my part on this behalf, we really wanted to get who we felt like was the best fit. A school background we felt like would help in this job, because you had been there day to day; you had seen a variety of things; you had talked to parents; you had talked to students; you had dealt with these kind of things. We felt like this was important to this job.

(Doc. 17-3 at 21.) Lindsey and Pearson's decision that Wojdula's prior experience fielding phone calls in the school setting was a legitimate business decision based on their knowledge of what the job of serving as their secretary entailed.

---

[4] "It might be that she is going to—she's going to call that school herself, speak with the Principal, and have the Principal call the parent. So there's a lot of decision-making that she's got to have some experience with to determine whether it's an emergency, it comes to us, she calls us, whether it can wait until that afternoon, whether this is something that needs to go back to the Principal to handle, a Guidance Counselor at the school, whatever so there is some discretion there." (Doc. 17-3 at 12.)

However, the Magistrate Judge ruled that since "school setting experience" was not one of the listed minimal qualifications for the job, and because Miller testified that she believes that "Lindsey prefers hiring white employees and Pearson has a reputation of not supporting or helping to promote other black employees," "a reasonable juror could conclude the Board's proffered reason that Wojdula has some special 'school setting' experience was merely a post-hoc justification, or pretext for discrimination." (Doc. 40 at 18.)

This Court disagrees and notes that it cannot second guess the legitimate business judgments of Pearson and Lindsey. While experience in the school setting was not listed in the minimal job qualifications, whether or not such experience is necessary for the job is the determination of the employer as they have the requisite knowledge of what experience and skills would be necessary and preferable for the applicants to this position. Pearson and Lindsey, who were interviewing candidates for a secretarial position that would support them personally and who knew the situations that their secretary would have to deal with on a day-to-day basis, made a subjective determination that Wojdula's school experience qualified her for the position. *See Springer*, 509 F.3d at 1349 ("[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a

hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext"). Moreover, Wojdula's answer to question five corroborates Lindsey and Pearson's determination that working in a school setting better prepares someone to be a SGD Secretary, as Wojdula answered that she had had to field calls from irate parents when she worked in the front office at Pinson Valley High School.

In this Court's view, the *only* fact raising an inference of race discrimination in this case is Miller's testimony that Lindsey prefers hiring white employees and Pearson has a reputation for not helping or supporting black employees. But however fervent, Miller's own belief, without more, simply does not raise a triable issue of fact, especially when the Board has offered extensive legitimate business justifications for not choosing her for the position. It is true that when considering a motion for summary judgment, "the court must . . . make all *reasonable inferences* in favor of" the nonmoving party. *Chapman*, 229 F.3d at 1023 (emphasis added). However, "an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Rebuttal requires that a plaintiff present "significant probative evidence on the issue to avoid summary judgment. But conclusory allegations of discrimination, without more, are not

sufficient to raise an inference of pretext." *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996). *See also Young v. General Food Corp.*, 840 F.2d 825, 830 (11th Cir. 1988)("Conclusory allegations of discrimination without more, are not sufficient to raise an inference of pretext of intentional discrimination where [employer] has offered . . . extensive evidence of legitimate, nondiscriminatory reasons for its actions.") (quoting *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 597 (11th Cir. 1987)).

###### 3.     Prior Personal Experience with Miller and Wojdula

The Board's third legitimate, non-discrimnatory reason for promoting Wojdula over Miller was that Pearson and Lindsey believed Wojdula's skill and experience made her a "better fit" for the position based on their personal experience working with Wojdula in the past.  Pearson and Lindsey had worked with Wojdula when she was a secretary in the "Office Assistant I" position.  Lindsey and Pearson testified that Wojdula was a problem-solver and a self-motivated worker that could move on to new tasks without needing specific direction.  As already discussed, Lindsey had also observed Wojdula when she worked at the front desk at Pinson Valley High School and had the opportunity to see how Wojdula acted on the phone, worked with the students, and helped teachers when they came into the office.  Lindsey had also

previously worked with Miller in the curriculum department.  Lindsey believed that, even though Miller had worked for the Board longer than Wojdula, Wojdula had the most experience in the areas needed for the SGD Secretary.

The Magistrate Judge's report and recommendation recognized Pearson and Lindsey's prior experience working with Wojdula as a legitimate, non-discriminatory reason for promoting Wojdula over Miller, but it does not provide a specific analysis showing how Lindsey and Pearson's reliance on their personal knowledge of Wojdula's job performance in making a decision to recommend her for the job was pretext.  Further, an examination of the record reveals none of the evidence needed to meet Miller's burden to show that Lindsey and Pearson's actions in taking into account personal experience with Wojdula's work performance was a pretext for discrimination.  Courts have recognized that first-hand experience with a candidate provides a sufficiently specific factual basis for an opinion that the other candidate was the most qualified for the job.  *See, e.g., Springer*, 509 F.3d at 1350.

In sum, in light of the instruction given by the Eleventh Circuit and Supreme Court on what constitutes pretext in a discrimination case, this Court simply cannot hold that Miller's sparse evidence—namely, her own beliefs about Pearson and Lindsey—is sufficiently probative of pretext to withstand a motion for summary

judgment. The Eleventh Circuit has stated that "[w]here the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." *Grigsby*, 821 F.2d at 597. This is such a case.

      B.     Miller Put Forth No Evidence that the Ultimate Decisionmakers (the Board) Based their Decision on Race

The Board also objects to the Magistrate Judge's report and recommendation on the ground that Miller put forth no evidence that the ultimate decisionmakers (the Board) based *their* decision on race.[5] The Board contends that it was not enough for Miller to show that the interviewers possessed discriminatory animus because, even assuming she was resting her case on the theory that the Board, in approving the interviewers' recommendation, ratified their allegedly illegal motives, she also had to show that the Board ratified not only the decision *but also the illegal motive behind it*. The Court notes that the Board appears to be raising this argument for the first time

---

[5] In accordance with the Board's hiring practices, Lindsey and Pearson recommended Wojdula for the position, their recommendation was sent to the HR Director, who then approved it and sent it to the Superintendent, who then approved it and presented it to the Board, who made the final decision.

in its objections and never made this exact argument before the Magistrate Judge.[6]

Because the Court will grant summary judgment to the Board based on the pretext

analysis above, it need not discuss whether the Board is correct on this point.[7]

III.    Conclusion

The Magistrate Judge entered a well-reasoned and thorough report and

recommendation, but having carefully reviewed and considered de novo all the

materials in the court file, including the objections to the report and recommendation

which the Magistrate Judge did not have, this Court cannot agree that there is a triable

issue of fact on whether the Board discriminated against Miller based on her race.

Accordingly, the Magistrate Judge's report is not due to be adopted.  For the reasons

---

[6] The Board did argue that because Miller was never recommended to the Superintendent for the position, and only Wojdula was, that Miller could not establish a prima facie case of discrimination.  The Magistrate Judge disagreed, and the Board did not object to that ruling.

[7] However, the Court suspects, without deciding, that the Board would still be liable for Pearson and Lindsey's alleged discriminatory conduct under the "cat's paw" theory of liability because it merely "rubber stamped" their recommendation to promote Wojdula.  Under a "cat's paw" theory, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not conducted an independent inquiry.  In such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw," to give effect to the recommender's discriminatory animus.  *See generally Crawford v. Carroll*, 529 F.3d 961, 979 (11th Cir. 2008).  The Magistrate Judge may have been alluding to this theory when he opined that "[b]ecause there are specific steps in the Board's hiring and promotion process, discrimination can be alleged and pinpointed at any step in the process.  Miller alleges she was discriminated against by the interviewers when they chose to recommend Wojdula for the promotion instead of her." (Doc. 40, p. 13 n.6.)  As the Magistrate Judge noted, failing to hold the Board liable would potentially insulate all school boards (and other governing bodies) from the consequences of impermissible discrimination in their hiring and promotion practices.

stated herein, there being no genuine issue of material fact, the Board's motion for

summary judgment (doc. 38) is due to be granted.  A separate order will be entered.

Done this 26th day of February 2014.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]